We'll call the next case, Lebanon Farms Disposal v. County of Lebanon and the Greater Lebanon Refuse Authority. Mr. Kutz. Here's your honor. You may proceed. Your honors, good morning. May it please the court, my name is James Kutz and I appear on behalf of the two appellants in this matter, the County of Lebanon and the Greater Lebanon Refuge Authority, which I will sometimes refer to as GLRA, if I could reserve three minutes for rebuttal if necessary. That request will be granted. Your honors, turning to today's arguments, my clients see two issues which require resolution today. The first, and we believe the most immediate issue, is whether or not a permanent injunction that was issued by the district court, and by the way it's been in place since July of 2006, and which voided my client's longstanding flow control program, must be vacated because it was admittedly premised upon an entirely erroneous standard associated with application of the Dormant Commerce Clause. Specifically, the trial court required my clients to meet a strict scrutiny standard in order to withstand constitutional challenge. Argument before this court was delayed in part pending the United States Supreme Court's handling of the case known as United Haulers. That decision came down in April of 2007, and we believe that without doubt United Haulers has carved an irrefutable distinction between legislation that deals with favoring private interests versus those that are publicly operated. Does your opponent assert that United Haulers does anything less than require a remand? I mean, are the parties agreed that there's got to be a remand? Your honor, that gets to my point. My opponents stand here, I presume, in a few minutes to argue, as they have asserted in their brief, that although the trial court imposed the strict scrutiny standard, although she never went near Pike analysis, although she never addressed our argument that all private interests are created the same in this case, there's no differential treatment, they nevertheless argue that the injunction should remain in place. And they suggest that there are three or four, excuse me, your honor, I'm taking some medication, there are three or four distinctions between United Haulers and the program at issue here in Pennsylvania. And in particular, in our reply brief, I think we have pointed out that those distinctions are both legally and factually erroneous or at most de minimis. What we believe, and by the way, United Haulers of course stands for the proposition, clearly five justices, perhaps six justices, saying that strict scrutiny has no place when you're dealing with one of these quintessential government functions, health, safety, welfare, and there's a reasonable basis for the plan. We believe the only issue before this court, your honors, is the Pike balancing test. Pike balancing. Should we do that or should we remand it to the district court? It is my strongest request that this court, based upon the record, understanding it came up on a summary judgment, cross-summary judgment issue, and by the way, we believe the standard is plenary before this court to that effect. We believe, your honor, that based upon the reading of United Haulers, and if I may, your honors, based upon the reading of the Supreme Court's affirmation of United Haulers in a case handed down just two weeks ago, the Department of Revenue of Kentucky case, no purposes served, judicial or pragmatic, to remand to the trial court because the record irrefutably contains what's necessary for this court to determine that there is no set of reasonable circumstances, your honor, under which the legislation and the program cannot be sustained over a claim of the dormant commerce clause. Even if we agree with you on that point, just so I can get this one issue out there. Isn't there still a remaining 1983 action that the district court hadn't gotten to that we may need to go back to, that it may need to go back for that purpose at least? I think there's a need for remand on one issue, and let me explain very quickly. The Lebanon Farms folks filed a motion for summary judgment as the liability only. They claimed if they prevailed on proving that the program violated the commerce clause, that gives them a claim for damages. The trial court hadn't reached that yet. We had a counterclaim contending that the program is valid, that Lebanon Farms was violating that program by hauling waste to a site other than the GLRA site, and therefore we are entitled to damages. To that extent, that issue remains open, but your honor, if you reverse the district court and conclude that there is no commerce clause violation, the only thing remaining for plaintiffs to have advocated would be their damages, and that would go away. Is there – you have said we ought to just go ahead and make the decision ourself, but in United Haulers itself, didn't the Second Circuit make a point of talking about how there had been discovery, ample discovery, those sorts of things? I mean, your argument here is that there's – the other side couldn't do anything or say anything or raise anything that might be better suited to be put before a fact finder, like the district court in the first instance? To answer your question, the Second Circuit Court of Appeals noted that the matter had been vetted. There had been discovery. Which hasn't happened here. It has, your honor. A pike analysis? Pardon me? A pike analysis. We filed on two different occasions motions asking that utilizing a pike analysis – But it didn't happen. The district court never applied pike, believing that Carbone created no distinction and therefore she was going to follow strict scrutiny. And understandable, other lower courts had made that assumption, so she did not apply it. All she concluded is because we did not have an open competitive bidding process where out-of-state facilities could seek to have the waste taken to them, and that kind of follows what Judge Becker had said in Harvey and Harvey a few years ago in this court, that therefore we could not meet the strict scrutiny standard. And all I'm suggesting, your honor, is – Let me give you an example and have you speak to this. If I read the record correctly, GLRA regulations include a provision that the GLRA could designate another site besides the county site, correct? Correct. Okay. Does that open a door that ought to get some factual scrutiny and that the district court ought to get a chance to think about in the first instance now that everybody agrees that United Haulers puts us in a whole new ballgame? With respect, no, and if I can explain. The trial court concluded that the only thing before her was an ordinance that said, except as otherwise provided, all waste must go to the GLRA landfill. We argued and we pointed out that in our 2000 plan, our 10-year plan, we expressly noted the federal court issues that had arisen that may require waste to go out-of-state. We argued that the ordinance where it says, except as otherwise provided, allowed for that opportunity for haulers to come in and say, may I take waste somewhere else? The trial court said, nope, it's clear on its face, and if it did work, it's such an awkward and cumbersome procedure, I'm concluding that it violates the Dormant Commerce Clause because the ordinance really says you can only haul waste here. Our position on that, Your Honors, you don't have to address that interpretive question anymore because United Haulers makes clear that if the ordinance read you can only take waste to one site, we still prevail under any analysis, especially given the deferential pipe test that the plurality proffered in Section 2D of United Haulers. All the Chief Justice did, Your Honors, speaking for that plurality, and I might note that the Kentucky case doesn't really help you in getting a pure majority of whether you perform that pipe test or not because Kentucky I understand, but you're arguing that the pipe analysis is the plurality holding and it does control, right? I would argue that there are two holdings to United Haulers. The pure majority is that when you have a program that treats all private interests the same, there is no discrimination for purposes of the Commerce Clause, argument one. That's clearly a five-justice holding in United Haulers. Justice Scalia joins in that one. When you get to D, Justice Scalia drops off. So I think the best guidance we have is whether the plurality tells you to do the pipe analysis with a very deferential approach. When you are dealing with a health, safety, and welfare issue such as the efficient environmental hauling and disposition of waste. It's actually controlling, isn't it? I mean, it's not just best guidance. It's the narrowest holding, isn't it? It's the narrowest holding of the plurality, Your Honor. But we would acknowledge that given a statement in the Kentucky case that it doesn't mean the end of the day if there's no discrimination. It appears that at least five justices are saying on some circumstance or in some way, you at least look to the burdens and you look to the benefits. Now, that court goes on to say in Kentucky, and frankly, the Chief does it in Section 2D of United Haulers, where he says it's very difficult for the federal judiciary to get involved in weighing these. Here's what I know. The hauling of waste is a traditional local function. It's a big problem in this country and has been. Harvey talks about the crisis in Pennsylvania. Act 101 identifies 24 different purposes to be achieved by the counties handling waste throughout the 67 counties of the state of Pennsylvania. The program works. The only distinctions that my friends argued that separates United Haulers from our case are as follows. One, my client now has a lot of money and we're well-to-do. The answer is I don't apologize for that, Judge. The program's been in place for 20-some years and we have sufficient assets to run the program and to provide for post-closure remedies and monitoring and financing and looking on to the future. I don't think anything the United Haulers says it's not appropriate for this governmental entity to be financially sound. Agreed. Number two, they suggest that in United Haulers the only thing at issue was a transfer station. Not a transfer station, but a processing station saying all waste had to go there, but after that it went back into private hands where in our case it gets disposed of in Pennsylvania. The Second Circuit in United Haulers expressly addressed the argument that they were in the final stages, Oneida and Herkimer, of finishing their own landfill and when that happened all waste would go there. And the Second Circuit said it doesn't matter if you make that argument. The burden's no different. And if you were to pull the transcript from the Haulers in the United States Supreme Court, their very first statement was judges, justices of this court, the burden's greater because now the waste is not only being processed by a private entity, it's being disposed of ultimately. That was argument number two. Their third argument trying to distinguish United Haulers is that municipalities, not the county, are responsible for recycling under Pennsylvania's law. They're wrong and we cite to the record in the reply brief. Eighty percent of our municipalities in Lebanon County aren't responsible because their density falls below the standard required to impose recycling on them. In any event, if you go to, I have three volumes here, Your Honor. We are involved in a million different recycling processes, obligations, education, household waste, pickup. The distinction that my client's not involved in recycling is just wrong factually. Finally, they argued that the chief pointed out the value of enforcing recycling in United Haulers. Whereas we argue that our general enforcement powers are made easier by knowing where the waste is going. I don't think it requires a remand to the trial court to conclude that enforcement's easier if you know where the waste is coming, you account for it, you charge for it, and you provide for adequate tipping fees to allow the process to go on in the future. Mr. Kutz, thank you. We'll have you back for rebuttal. Thank you. Mr. Gutschall. Good morning. I'm Charlie Gutschall and I'm here representing Lebanon Farms Disposal. I think if it's all right with the court, I'd like to first address the issue of a remand versus this court doing a pike balancing test. At a minimum, this case, I believe, would require a remand because the record has not been developed concerning a pike balancing test. Do you agree at the outset that the injunction has to be dissolved? No, Your Honor, I will address that. I think the more prudent approach is to look at the record that's been developed thus far and determine whether under the pike test the injunction should remain in effect at least until the remand is completed. You want us to do the balancing test? I think that the record is sufficient, even though the standard has changed, for Lebanon Farms to meet the pike balancing test. Well, that may be, but the analysis would be somebody has to do the balancing test. And isn't it more appropriate to have the district court do that in the first instance? Yes and no. Yes, because the record hasn't been developed on pike fully. No, because based upon the record before the court now, Lebanon Farms can demonstrate that the ordinance is invalid under pike. So you're saying you can win on this record on pike balancing, but they can't win on pike balancing. It's interesting. It seems I take a different position from my colleague, Mr. Cooks, on that. Why don't you get more specific? What's in the record, or what isn't in the record that needs to be in the record to enable us to do a fair pike balancing test? Okay, under pike you look at two things. You look at the effect of the regulation, the effect of the ordinance on interstate commerce, and you look at any public benefits. The record as it exists now I think demonstrates the effect on interstate commerce. It is the most obvious effect on interstate commerce because you have an ordinance that requires all municipal waste within Lebanon County to go to the captive CLRA facility. So it doesn't treat interstate or intrastate commerce any differently? That's incorrect, Your Honor. How does it treat it differently? It doesn't allow any waste from Lebanon County to go out of the county. It doesn't allow any waste from outside of Pennsylvania or even outside of the county to come to the GLRA facility. Well, I'm looking at the ordinance now, and there is a subsection B that says delivery of regulated municipal waste to other sites pursuant to plan may occur only as permitted by, et cetera, et cetera, or duly issued by the GLRA. But the GLRA has only designated one facility. They've only designated one, but you can still apply to take it somewhere else and get their permission, and I take it from the record you have not done so, and nobody else has done so. Your argument might hold pre-2000, but post-2000, what Judge John has done. Well, what Judge Cain said, and I think it's correct, is that the ordinance is the law, not the plan. This is the ordinance I'm reading from, and it allows exceptions to go to other sites, and you don't seem to recognize that in your papers. Well, Your Honor, that was litigated heavily before the district court. Pardon? That was litigated heavily before the district court, and Judge Cain said that the ordinance does not allow waste to go to any facility other than the GLRA. How do I read this section then to support that finding? You read that section to support that finding because there has never been another site designated. Has anybody asked for another site? In the planning process, no other sites were solicited, no other sites submitted bids, and the only facility was that. Oh, no, but there is one site that was selected. That's one thing. But as I read this, that means that if you or your client wants to go to another site because the fees are cheaper, you apply to these folks, and they have to have a reasonable process and then allow you to do that. Whether it's in-state or out-of-state. That's not what Judge Cain found as the important ordinance. I interrupted you, and I said, doesn't it treat intrastate and interstate the same? What about the benefits? Well, the record on benefits really hasn't been developed at all because the standard has changed, and this was litigated at the lower court under a strict scrutiny standard. Then how could we do the PIKE analysis here? You said we could do it here, but you just acknowledged that there's not a record on which we could gauge the benefits side. The record currently shows no benefits from the ordinance. The only thing that's cited by my colleagues for the county and for the GLRA is the 2000 plan. There's no evidence in the record even that the GLRA has done any recycling. Couldn't we use the same analysis that the Supreme Court used in United Haulers? That's the PIKE analysis, Your Honor. They found benefits from flow control. Couldn't we look at that, come to the same conclusions? Well, the benefits from flow control were found primarily as supporting issues such as recycling, and this case is factually very different than United Haulers. First of all, all waste within Lebanon County goes to the one facility, and United Haulers, contrary to what was argued about the Second Circuit, if you read this, I'm sure you have read the Supreme Court decision, the Supreme Court decision based the decision on the fact that the capital facility in United Haulers was a processing facility, similar to a transfer station. Okay, the bottom line is how can you win on the PIKE balancing test? That's the bottom line here, really. Okay, I'm happy to address that. How can you win? First of all, the impact of this ordinance, I believe, is the clearest impact on interstate commerce. All Lebanon County waste goes to one facility, and no out-of-state waste goes to that facility. So if you look at it under the Second Circuit's teaching in the UNI sanitation case, you look at that as if what if other jurisdictions adopted that same type of a scheme, and what would be the impact on interstate commerce? And it would, of course, be incredibly dramatic. But the Supreme Court said if it's a public facility, you can do that. I don't think that's what the Supreme Court said. I think the Supreme Court said you have to apply PIKE. You have to apply a PIKE balancing test. I don't think the Supreme Court said that just because it's a public facility, you can have any kind of flow control that you want. Here's the problem I'm having with your argument. You're saying that you can win on PIKE, but you're also acknowledging that the record is devoid of any factual development or inquiry about benefits. And if that's what's crucial to a PIKE analysis, and it is, and the only reason it hasn't been developed is because everybody was operating with the wrong standard through no fault of Judge Keynes or anybody else's. I mean, Carbone was out there, and people were doing their best with it, and we've got later Supreme Court authority. How could we do what you're suggesting when you're acknowledging to us that there isn't a record about benefit? Okay. If the court were to choose to do a PIKE analysis based on the current record, that's what I'm addressing. On the current record, you have a complete bar of waste coming into Lebanon County or waste going out of Lebanon County. That's the most dramatic impact a flow control ordinance can have on interstate commerce. The second issue you have is if you look at benefits, there's no record evidence on benefits at all. The only thing that's cited by the GLRA and the county is the 2000 plan, which doesn't demonstrate anything that was in the 2000 plan. It doesn't demonstrate that anything's been done. So if you applied PIKE based on the current record, I would suggest that Lebanon Farms prevails on that standard. If it's remanded, then I agree the record evidence should be developed on benefits. Is flow control really what bans the flow of waste into Lebanon County? Yes. Isn't flow control really the control of Lebanon County waste directed to a specific facility? The record shows that the GLRA does not allow out-of-state waste to come in the facility. And you're saying the Supreme Court has said that they must? No, I'm not saying the Supreme Court says that they must. What I am saying is that this is the most dramatic type of flow control. But that's not flow control. It's control of waste. That's a ban on out-of-state waste. It's a ban on out-of-state waste. It's a different type of flow control. So that's not really the issue that's before the court. Yes, it is, Your Honor, because you have to look at the impact of the scheme. Is that what you challenged below? No, there's only one ordinance. What the ordinance says is all Lebanon County waste has to go to the Supreme Court. Yeah, and that's what's before us. It's not what's in Maryland that your company might be trying to haul into Pennsylvania and dispose of in the Lebanon County landfill. That's not the issue before the court. And you're trying to make that the interstate argument that precludes us from doing the balancing test. That's why I said I think that it seems to me that this ordinance treats interstate commerce and intrastate commerce the same. I would beg to differ, Your Honor. I know you do. On the basis that interstate commerce would concern Lebanon County waste going out of the state or out-of-state waste coming into Lebanon County. That's the issue. The issue is you want to be able to take the waste that you have a contract to transport to a place where you could pay a lesser tipping fee. That's the issue. Well, that's why Lebanon Farms is challenging the ordinance. That's the issue. But that's the issue. And under the act in question and the ordinance that was implemented, they're saying no. If it's generated in Lebanon County, you have to take it here to the authorities' waste site. That's correct. Okay. That's correct. That's your interpretation. The part that I read, I still think, doesn't prohibit you from taking it somewhere else if you apply to them and get permission, which you have never done. Your Honor, I think the record would reflect that the GLRA would not grant. What part of the record would say that? Where in the record would we draw the conclusion that it would be fruitless for you to make the effort? I don't think the record would demonstrate that that would be fruitless. However, the ordinance requires all waste to go to one facility at this time, and that has never changed since the ordinance was adopted in 1990. Now, you said that the injunction should stay in place. If we take it as a given that the legal landscape has shifted under the parties with the United Haulers' decision that there's a new standard that has to be applied, other than the one that Judge Cain applied in this instance, why would it be fair or appropriate to leave an injunction in place which is based on an erroneous legal standard? Well, you could only do that if you applied Pike to the facts. So if we didn't apply Pike to the facts, but let the district court do that, we would be vacating the injunction and remanding? I think that's correct. But, again, I believe that the current record demonstrates that Lebanon Farm prevails on a Pike analysis. Anything else? That's it. Thank you. Thank you very much. We'll have Mr. Gutz back on rebuttal. A couple of very quick points, Your Honor. Mr. Gutschel suggested that United Haulers allowed for an opportunity to them to reasonably go back and develop a record that would result in a conclusion that the commerce burden is clearly excessive in relation to the local benefits. And I want to call the Court's attention to the Supreme Court decision in United Haulers. It first quotes the Second Circuit and says, the Second Circuit alluded to but did not endorse a, quote, rather abstract harm that may exist because the flow control ordinances have removed waste generated in these counties from the national marketplace. Importantly, what the Court says, we find it unnecessary to decide whether the ordinances impose any incidental burden on interstate commerce because, quote, any arguable burden does not exceed the public benefit of the ordinances. And the Court then goes on to note that these ordinances give the county a convenient and effective way to finance their package and to control the flow of waste, a quintessential local function. There is no suggestion that, excuse me, there's no dispute, the citizens of Lebanon County want this program. If they pay for it, it's their choice. The Supreme Court said that was very important in Section 2D. They're the ones who have selected the program. Beyond that, it's working. Everyone can participate in state landfills in State College, in Pittsburgh are treated the same way as a landfill in Florida. Haulers can be situated in Lebanon, Pennsylvania or Los Angeles, California. They can all participate. There is no burden and there's no differential treatment. Differential treatment, defined under the Commerce Clause, is treating in-state private interest different than out-of-state private interest. There is no impact here whatsoever. My clients and... You're saying your landfill will accept waste from Maryland? No, we will not, but, Your Honor, we also won't accept waste from your county under the program. There is no difference. I think that's a very good point. That was my point about the landfills. It doesn't matter who you are or where you are. Lebanon County is going to take care of their own waste, and they've done so for 18 years very efficiently. Now, my question, and I'm still going back on this ordinance because I don't think I got a very good answer, well, an answer that satisfied me anyway. Their claim is that they have to take everything to you. And as I read the ordinance, it says, except as provided in B and C below, it goes to you, but B allows them to get permission to go to another site. It absolutely does. Is that incorrect reading in some way? Your Honor, Priority United Haulers, that was one of our alternative arguments. We made two arguments. We argued pipe below because of just what the Supreme Court said. Everybody's treated the same. Number two... Has anybody ever applied to you to go somewhere else? Yes. One party applied and then chose not to accept the authorization to go, and it dealt with Indian Town Gap, which is in Lebanon County. They were authorized to go. Yeah. But they chose not to do it. They chose not to. And if you look at the plan, it's cited in our brief. Our 2000 plan says, we're now going to have to make an accommodation, it appears, based on federal precedent. We asked Mr. Gutschall's clients, have you applied? They said, no, it would be futile. They don't want to. They want to overturn this very effective, environmentally sound project. It has been two years, Your Honor, almost, since that injunction's been in place, and we have chaos and uncertainty. It was for that reason and for the passage I read from United Haulers, where the Chief Justice says, it doesn't matter if you can find some abstract burden because there is no way any arguable burden exceeds the public benefits. That's why we ask that the matter be resolved here, Your Honor. And if it is, then we don't have to reach the more difficult question of why Judge Kaine won't look at subsection B, as Your Honor just articulated. Thank you very much. Thank you. We thank counsel for their arguments. We'll take the matter under advisement.